# UNITED STATES DISTRICT COURT
# DISTRICT OF KANSAS

| | | |
|---|---|---|
| LEAMAN CREWS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.   19-cv-2541-CM-ADM |
| | ) | |
| KATHLEEN HAWK SAWYER, in her | ) | |
| official capacity as the Director of the Bureau | ) | |
| of Prisons, and Dr. DEBORAH G. SCHULT, | ) | |
| in her official capacity as Assistant Director for | ) | |
| the Health Services Division of the Federal | ) | |
| Bureau of Prisons, | ) | |
| | ) | |
| Defendants. | ) | |

## REPLY IN SUPPORT OF PLAINTIFF'S MOTION FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION

Defendants characterize the relief Mr. Crews seeks as "provid[ing] him with the particular MAT medication of his choosing." But Defendants are providing Mr. Crews with *no* MAT medication, though they recognize that MAT is the medical standard of care for opioid use disorder. Quite to the contrary, Defendants have abruptly discontinued Mr. Crews' enormously successful MAT therapy and, after providing nothing for two days, *replaced it with an opioid*: acetaminophen containing codeine. What's more, Defendants intend to withdraw the codeine within a few days. This course of action represents a dramatic departure from the standard of care and Defendants should be temporarily restrained from obstructing[1] Mr. Crews' access to his physician-prescribed, medically necessary medication.

Applying the *Winter* test, Mr. Crews has established that he is likely to succeed on the merits. **First**, as to the objective component, Mr. Crews has opioid use disorder diagnosed by his

---

[1] Mr. Crews self-surrendered on September 4 with a supply of Suboxone prescribed by his treating physician.

1

treating physicians, had been prescribed Suboxone,[2] and had successfully stayed in treatment for more than a year. *See Sealock v. Colorado*, 218 F.3d 1205, 1209 (10th Cir. 2000) ("[a] medical need is sufficiently serious if it is one that has been diagnosed by a physician as mandating treatment"). **Second**, as to the subjective component, Defendants "knew [Mr. Crews] faced a substantial risk of harm and disregarded that risk, by failing to take reasonable measures to abate it." *Hunt v. Uphoff*, 199 F.3d 1220, 1224 (10th Cir. 1999). Defendants know that the abrupt discontinuation of a partial opioid agonist causes withdrawal syndrome, including but not limited to "flu-like symptoms, including nausea, diarrhea, vomiting." Newell Decl. ¶ 4. Yet they involuntarily discontinued Mr. Crews' Suboxone anyway. They emphasize that medical staff discussed Mr. Crews' OUD and that he has seen medical staff, but even "the fact that [an inmate] has seen numerous doctors" does not "necessarily mean that he received treatment for serious medical needs, i.e., that treatment was prescribed at all or that prescribed treatment was provided." *Hunt*, 199 F.3d at 1224. Indeed, at the same time Mr. Crews' OUD was being discussed by medical staff, he was going without MAT altogether.

In fact, medical staff not only refused to provide Mr. Crews with the treatment that had successfully put his OUD in remission but also substituted the very same type of drug he had been addicted to. Medical staff made this peculiar decision because their hands were tied: they knew discontinuing Mr. Crews' physician-prescribed Suboxone would cause painful—and completely preventable—withdrawal symptoms, which they knew they had a duty to avert. Yet the medically appropriate path to prevent these symptoms was closed to them by Defendants'

---

[2] To reiterate, Suboxone is a sublingual film that disintegrates in the mouth. It comprises buprenorphine (a partial opioid agonist) and naloxone (an opioid antagonist). Buprenorphine is absorbed very well in the mouth, while naloxone is not. Indeed, naloxone has no clinical benefit for OUD when administered in this way. However, because naloxone is absorbed very well through the bloodstream, it is added to the Suboxone formulation to prevent the diversion of the medication. If a person attempts to misuse Suboxone by crushing or diluting to inject, the naloxone binds to their opioid receptors first, preventing the buprenorphine from having any effect whatsoever.

categorical policy prohibiting them from providing Suboxone, even in situations where a person's individual medical needs necessitate it.[3] So instead they prescribed a drug that comes in tablet form, is not paired with an antagonist like Suboxone, and whose efficacy in treating OUD is at best untested.

As it stands now, Mr. Crews has already lost the year of progress he had made in managing his chronic condition without relapse with the partial opioid agonist Suboxone *and also* will experience the significant physical and psychological distress of opioid withdrawal syndrome when the codeine is forcibly discontinued in a matter of days. *Garrett v. Stratman*, 254 F.3d 946, 950 (10th Cir. 2001) ("[S]ubstantial harm requirement may be satisfied by . . . considerable pain."); *Sealock v. Colorado*, 218 F.3d 1205, 1210 and 1210 n.5 (10th Cir. 2000) (where there was "factual evidence from which a jury could conclude that the delay occasioned by . . . inaction unnecessarily prolonged [inmate's] pain and suffering" for "several hours," inmate had "shown that his need was sufficiently serious to require prompt medical attention") (relying on *Wilson v. Seiter*, 501 U.S. 294, 297 (1991)).

Defendants have seemingly misunderstood Mr. Crews's position concerning the PLRA's exhaustion requirements. Contrary to Defendants' characterization, Mr. Crews is not arguing that administrative remedies would be futile or that prison officials have deterred him from exhausting administrative remedies.  Rather he asserts that BOP's grievance procedures are not available to him within the meaning of 42 U.S.C. §1997e(a).  Mr. Crews also argues that his

---

[3]  Defendants argue that, theoretically, waivers of this blanket policy against buprenorphine-based maintenance therapy could be granted, but they do not dispute that no waiver was applied for here—despite the fact that a person suffering from OUD but who has had enormous success on Suboxone in preventing relapse is perhaps the *most* appropriate candidate for Suboxone-based MAT—nor point to any situation where it has been granted for any inmate at USP Leavenworth. Instead, they repeatedly emphasize the availability of the opioid antagonist naltrexone (Vivitrol), which chemically prevents relapse and overdose but (unlike buprenorphine) does not prevent the other serious problems arising from the chronic, neurobiological disease OUD: the considerable physical and psychological symptoms of withdrawal and the management of cravings so the brain can be retrained.

attempts seek remedies through the limited informal procedures available to him have been denied.

First, Defendants' argument on this point seems to conflate two concepts: futility and unavailability. Defendants correctly note that the Tenth Circuit has declined to recognize that the PRLA contains a futility exception to exhaustion. *See Jernigan v. Stuchell*, 304 F.3d 1030, 1032 (10th Cir. 2002). However, the "futility exception" the Tenth Circuit rejected refers specifically to claims that a plaintiff should be able to forego the administrative grievance process because of its "perceived ineffectiveness." *Hoover v. West*, 93 Fed. Appx. 177, 180 (10th Cir. 2004)(*quoting Giano v. Goord*, 250 F.3d 146, 150-1 (2d. Cir. 2011)); *Feuer v. McCollum*, 2004 U.S. Dist. LEXIS 20303 at 18 (D. Kan. 2004). The court has distinguished futility arguments, premised on a plaintiff's lack of confidence in the grievance process, from unavailability arguments, where the plaintiff demonstrates he is unable to comply with the grievance procedures. *Hoover*, 93 Fed. Appx. at 181. It is well established that "an inmate is only required to exhaust those remedies that are available to him." *See Tuckel v. Grover*, 660 F.3d 1249, 1252 (10th Cir. 2011). A remedy is unavailable if the plaintiff is not "reasonably capable of exhausting" the grievance process. *Hoover*, 93 Fed. Appx. at 181. Courts have found administrative remedies are unavailable under the PRLA where circumstances deny the plaintiff the ability to comply with grievance procedures in time to vindicate the inmate's rights. *Whitmore v. Jones*, 456 Fed. Appx. 747, 750 (10th Cir. 2012)(noting action or inaction of prison officials can render administrative remedies unavailable); *White v. Bukowski*, 800 F.3d 392, 397 (7th Cir. 2015)(finding incarcerated mother who only had four days to file grievance for inadequate pre-delivery medical care was effectively prevented from filing a grievance, noting "an administrative remedy that would be forfeited for failure to comply with a deadline that in

the circumstances could not possible be complied with [is] not…'available' within the meaning of 42 U.S.C. 1997e(a)").

Mr. Crews is not arguing that he should be excused from the grievance process because it will be ineffective. Instead, he is arguing that he is not reasonably capable of exhausting the grievance process before he will be forced off his medically assisted treatment.  Under BOP's policy, Mr Crews was set to be fully tapered off buprenorphine in ten days or fewer. He would not reasonably be able to complete BOP's grievance process and appeal prior to having his medication taken away.  Moreover, BOP decided to take Mr. Crews off of buprenorphine immediately, it has been impossible for him to exhaust the grievance process within a single day.

Additionally, Mr. Crews is not arguing that prison staff have thwarted his grievance efforts through threats or intimidation tactics. However, he does argue that his attempts to informally raise his grievances through his counsel's outreach have been unsuccessful and effectively stalled.

Respectfully submitted,

/s/ Lauren Bonds
Lauren Bonds, KS Sup. Ct. No. 27807
Zal Shroff, KS Sup. Ct. No. 28013
ACLU Foundation of Kansas
6701 W. 64th St., Suite 210
Overland Park, KS 66202
(913) 490-4114
(913) 490-4119 (fax)
lbonds@aclukansas.org
zshroff@aclukansas.org

**Counsel for Plaintiff**

5

## **CERTIFICATE OF SERVICE**

I hereby certify that on the 10th day of September, 2019, I electronically filed the foregoing

with the clerk of the court by using the CM/ECF system, which will send a notice of electronic

filing to all attorneys of record.


/s/ Lauren Bonds
Lauren Bonds