IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF KANSAS

LEAMAN CREWS,

        Plaintiff,

v.                                                                                   Case No. 19-2541-JWB

KATHLEEN HAWK SAWYER, in her
official capacity as the Director of the
Federal Bureau of Prisons, and
DEBORAH G. SCHULT, in her
official capacity as Assistant Director for
the Health Services Division of the
Federal Bureau of Prisons,

        Defendants.

**MEMORANDUM AND ORDER**

This matter is before the court on Defendants' motion to dismiss. (Doc. 36.) The motion is fully briefed and is ripe for review. (Docs. 37, 45, 49.) For the reasons stated herein, the motion to dismiss is GRANTED.

**I. Background**

Plaintiff has opioid use disorder. To treat his disorder, Plaintiff began using buprenorphine as medication-assisted treatment (MAT) in 2018. On September 4, 2019, Plaintiff entered into the Bureau of Prisons (BOP) custody at USP Leavenworth. When Plaintiff arrived at USP Leavenworth, prison staff told him that he would not receive buprenorphine as MAT while incarcerated. Plaintiff promptly filed this case, asking for a temporary restraining order, to prohibit Defendants from denying him continuation of his treatment. (Doc. 2.) On September 11, 2019, Plaintiff filed a motion to withdraw his motion for a temporary restraining order, representing that

the parties had "reached a resolution in this matter." (Doc. 31 at 1.) The evidence later presented by the parties in support of their briefing on the motion to dismiss shows the following:

- Plaintiff requested emergency injunctive relief after 4:00 p.m. on Friday, September 6, 2019. Within five calendar days, plaintiff was receiving buprenorphine treatment. No one at USP Leavenworth was licensed to prescribe buprenorphine, so staff arranged for a telehealth appointment with a BOP physician who was able to prescribe the medication for Plaintiff. Plaintiff began MAT therapy in the form of Suboxone film strips that were placed under his tongue to dissolve.

- BOP's Medical Director, Dr. Jeffery D. Allen, stated in a Declaration signed under penalty of perjury that "so long as it remains medically necessary and appropriate, [Plaintiff] will be able to remain on MAT therapy with Suboxone during his entire period of incarceration with the BOP." (Doc. 37-3 at 5.)

- The National Formulary Part I is a list of medications considered by BOP staff to provide drug therapy for inmates. BOP medical care is provided in accordance with the Formulary, as well as agency policies, Clinical Guidance, and other medically-accepted practices. (*Id.* at 3.) The Formulary provides, "Buprenorphine . . . [w]ill only be approved for detoxification, NOT for pain or maintenance therapy." (Doc. 3-2 at 15.) Dr. Allen approves the Formulary but also recognizes that the Formulary allows for flexibility in application when the proper channels are followed. (*See generally* Doc. 37-3 at 3–4.) According to Dr. Allen, even when a medication is not on the BOP's Formulary, the medication can still be reviewed and approved when medically necessary—as was done in this case. (*Id.* at 3.)

- The BOP's *Patient Care Manual* (Program Statement 6031.04) gives clinicians discretion to provide necessary care. According to Dr. Allen, it "does not preclude long-term treatment of Opioid Use Disorder with Suboxone." (*Id*. at 2.) Neither does the Pharmacy Services Program Statement (Program Statement 6360.01), although it would require non-Formulary approval. (*Id.* at 3.)

- On November 5, 2019 (about a month after Plaintiff filed this case), the BOP issued interim technical guidance "expanding its MAT Program to include all FDA approved MAT medications currently available in the United States," including buprenorphine. (Doc. 37-5 at 3.) The guidance provides that offenders who enter the BOP with "prescribed MAT treatment plans . . . **will be continued**" on those plans, "if clinically appropriate." (*Id.* at 5–6.)

- The BOP's expansion of its MAT Program was, in part, to comply with the First Step Act. This Act requires that the BOP develop and implement "plans to expand access to evidence-based treatment for heroin and opioid abuse for prisoners, including access to medication-assisted treatment in appropriate cases." First Step Act, Pub. L. 115-391, 132 Stat. 5193, 5244 (2018).

- There is a dispute over whether on February 5, 2020, Plaintiff misused his medication. Plaintiff denies doing so, but he was placed in a Segregated Housing Unit (SHU). While there, Plaintiff claims that several BOP staff members taunted him about his buprenorphine treatment. These staff members, however, are not BOP policy decisionmakers, and have no control over whether Plaintiff receives medication. (Docs. 49-4 at 3; 52 at 8.)

- Plaintiff claims that on February 17, 2020, B. Herbig told Plaintiff he intended to have Plaintiff transferred because of the burden of Plaintiff's treatment. B. Herbig is a Special Investigative Support Technician, but Plaintiff erroneously refers to him as a lieutenant. According to Plaintiff, B. Herbig also told Plaintiff that he wanted to remove Plaintiff from his buprenorphine treatment for three days to "see what would happen." (Doc. 45-1 at 3.) B. Herbig is not a BOP policy decisionmaker and has no role in decisions about an inmate's medication. (Docs. 49-5 at 4; 52 at 8.)
- On February 19, 2020, Plaintiff's MAT provider recommended weaning Plaintiff off the buprenorphine because Plaintiff's behavior was "inconsistent with the desire to fully comply with the program for treatment of opiate dependence with Suboxone." (Doc. 52 at 7.) The provider sent a new prescription with new directions.
- As of March 16, 2020, Plaintiff continued receiving buprenorphine MAT—just at a lower dosage than before.

Defendants move to dismiss the case on three grounds: (1) Plaintiff lacks standing; (2) Plaintiff's claims are moot; and (3) Plaintiff failed to administratively exhaust his claims. The first two grounds are jurisdictional and fall under Fed. R. Civ. P. 12(b)(1). The third falls under Rule 12(b)(6).

**II. Legal Standards**

The court discusses the standards for only the first of the two of the provisions invoked by Defendants—Rule 12(b)(1)—because that provision is dispositive in this case.

"Different standards apply to a motion to dismiss based on lack of subject matter jurisdiction under Rule 12(b)(1) and a motion to dismiss for failure to state a claim under Rule 12(b)(6)." *Muscogee (Creek) Nation v. Pruitt*, 669 F.3d 1159, 1167 (10th Cir. 2012). When the

court is faced with motions for dismissal relying on both Rule 12(b)(1) and 12(b)(6), the court must first determine that it has subject matter jurisdiction over the controversy before reviewing the merits of the case under Rule 12(b)(6). *Bell v. Hood*, 327 U.S. 678, 682 (1946). Because federal courts are courts of limited jurisdiction, a presumption exists against jurisdiction, and "the burden of establishing the contrary rests upon the party asserting jurisdiction." *Kokkonen v. Guardian Life Ins. Co. of Am.*, 511 U.S. 375, 377 (1994). Therefore, the court will first review the challenge to subject matter jurisdiction.

"Motions to dismiss for lack of subject matter jurisdiction generally take one of two forms: (1) a facial attack on the sufficiency of the complaint's allegations as to subject matter jurisdiction; or (2) a challenge to the actual facts upon which subject matter jurisdiction is based." *City of Albuquerque v. U.S. Dep't of Interior*, 379 F.3d 901, 906 (10th Cir. 2004) (internal citations omitted). If the motion challenges the sufficiency of the complaint's jurisdictional allegations, the court must accept all such allegations as true. Holt v. United States, 46 F.3d 1000, 1002 (10th Cir. 1995). But if there is a challenge to the actual facts (as there is in this case), the court has discretion to allow affidavits and other documents to resolve disputed facts. *Id*. at 1003. When the court considers evidence under these circumstances, the court does not need to convert the motion to one for summary judgment. *Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir. 1987) (citations omitted).

**III. Analysis**

The court turns directly to Defendants' argument that Plaintiff's claims are moot. While the court could also address Plaintiff's standing (Defendants argue that even when the case was filed, Defendants' policies did not prevent Plaintiff from receiving treatment), mootness presents a more direct route to the resolution of this case.

Federal court jurisdiction requires a live case or controversy, making mootness a threshold inquiry. *United States v. Fisher*, 805 F.3d 982, 989 (10th Cir. 2015) (quoting *In re L.F. Jennings Oil Co.*, 4 F.3d 887, 889 (10th Cir. 1993)). Litigants must maintain a personal stake in the lawsuit and its outcome, or a case or controversy ceases to exist. A personal stake disappears if a litigant's injury is healed by an event and prospective relief is the only relief sought. *S. Utah Wilderness All. v. Smith*, 110 F.3d 724, 727 (10th Cir. 1997). Essentially, the court asks, "[H]ave circumstances changed since the beginning of litigation that forestall any occasion for meaningful relief[?]" *Id*. If yes: the case is moot. *Brown v. Buhman*, 822 F.3d 1151, 1165–66 (10th Cir. 2016). Although mootness is a matter of subject matter jurisdiction, the burden is on the defendant(s) to show that a case or controversy no longer exists. *WildEarth Guardians v. Pub. Serv. Co. of Colo.*, 690 F.3d 1174, 1183 (10th Cir. 2012) (citation omitted).

When a defendant voluntarily ceases conduct, dismissal on mootness grounds is only appropriate "if it is clear that the defendant has not changed course simply to deprive the court of jurisdiction." *Rio Grande Silvery Minnow v. Bureau of Reclamation*, 601 F.3d 1096, 1115 (10th Cir. 2010) (citation omitted). This limit "exists to counteract the possibility of a defendant ceasing illegal action long enough to render a lawsuit moot and then resuming the illegal conduct." *Id*. (internal quotation marks omitted). And the party claiming mootness based on cessation of conduct bears a heavy burden to show "(1) it can be said with assurance that there is no reasonable expectation that the alleged violation will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation." *Id*. at 1116 (citation omitted). When the government is the party engaging in self-correction, however, this burden is lighter. *Ghailani v. Sessions*, 859 F.3d 1295, 1302 (10th Cir. 2017) ("[G]overnment 'self-correction provides a secure foundation for mootness so long as it seems genuine.'"); *see also Rio Grande*

*Silvery Minnow*, 601 F.3d at 1116 ("In practice, however, [the] heavy burden frequently has not prevented governmental officials from discontinuing challenged practices and mooting a case.").

Here, we have a matter of government self-correction. First, Defendants used their discretion to provide Plaintiff with the MAT therapy requested. Second, the BOP issued interim guidance that shows a continuing commitment to provide MAT therapy where deemed medically appropriate. And third, while this alteration in conduct may have been based in part on the instant lawsuit, the BOP is also expanding its program to comply with the First Step Act. Under these circumstances, the government self-correction "seems genuine." *Ghailani*, 859 F.3d at 1302.

Plaintiff argues that his claims are not moot "[b]ecause none of Defendants' official policies guarantee [Plaintiff] continued access to his medically necessary treatment—and because [Plaintiff] has recently received threats from Defendants' staff that he will either be denied his medication or moved to a facility where his medication will be unavailable to him . . . ." (Doc. 45 at 4.) But Defendants addressed Plaintiff's desire for a guarantee of continued access with Dr. Allen's statement that "so long as it remains medically necessary and appropriate, [Plaintiff] will be able to remain on MAT therapy with Suboxone during his entire period of incarceration with the BOP." (Doc. 37-3 at 5.) And Plaintiff's concern about staff members showing hostility toward his continued treatment does not take the risk of discontinued treatment beyond the threshold of speculation. *See Rio Grande Silvery Minnow*, 601 F.3d at 1117 ("[T]he 'mere possibility' that an agency might rescind amendments to its actions or regulations does not enliven a moot controversy. A case 'cease[s] to be a live controversy if the possibility of recurrence of the challenged conduct is only a "speculative contingency."'") (citations omitted). The staff members do not have any control over Plaintiff's medical care.

The subject matter of this lawsuit has been addressed both by Defendants' actions, as well as BOP's interim guidance on MAT. Plaintiff seeks only injunctive and declaratory relief. There is no longer a need for either.

**IV. Conclusion**

For the above reasons, the court determines that it lacks subject matter jurisdiction over this case. The court "cannot accord [Plaintiff] prospective relief that would have any effect in the real world." *Jordan v. Sosa*, 654 F.3d 1012, 1029 (10th Cir. 2011). There is no longer a case or controversy, and Plaintiff's claims are moot.

Defendants' motion to dismiss is GRANTED. (Doc. 36.) Plaintiff's claims are dismissed without prejudice for lack of subject matter jurisdiction.

IT IS SO ORDERED this 31st day of March, 2020.

_____s/ John W. Broomes_____
JOHN W. BROOMES
UNITED STATES DISTRICT JUDGE